IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALSCOTT, INC. d/b/a ALSCOTT SURETY, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:22-CV-00844-L |
| SAM SEALER and SEALER BUSINESS GROUP, LLC, | § § § | |
| Defendants. | § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's Motion for Temporary Restraining Order, Expedited Discovery, & Preliminary Injunction (Doc. 8), filed on May 11, 2022 ("Motion"). In the Motion, Plaintiff Alscott, Inc. d/b/a Alscott Surety, Inc. ("Plaintiff" or "Alscott") seeks enforcement of a non-solicitation and non-disclosure agreement against Defendants Sam Sealer ("Mr. Sealer") and Sealer Business Group, LLC ("SBG") (collectively, "Defendants"), in the form of a temporary restraining order. *See* Doc. 8. Plaintiff also asks the court to set a hearing for entry of a preliminary injunction and order expedited discovery for that hearing. *Id.* at 34. After a careful review of the motion, briefs, pleadings, record, and applicable law, the court **denies** Plaintiff's Motion for a Temporary Restraining Order, and **denies without prejudice** Plaintiff's Motion for a Preliminary Injunction and Expedited Discovery.

I.  **Factual and Procedural Background**

Plaintiff Alscott brought this action on April 14, 2022, against Defendants, alleging claims based on trade secret violations, breach of contract, various torts, and unjust enrichment. In its

Complaint, Plaintiff seeks compensatory damages, lost profits, restitution, exemplary damages, attorney's fees, prejudgment interest, and post-judgment interest.

Alscott alleges that it "bridges the gap between the construction world and the surety world by providing various bonding programs." Doc. 15-1, Pl's Ex. A, Declaration of David Salavitch ¶ 2. In March 2018, Alscott, a Missouri-based company, employed Mr. Sealer "as a salesperson at Alscott, and primarily focused on selling bond packages and services to construction clients of Alscott" to Texas clients. *Id*. at 10; Doc. 13 at 7. During the course of Mr. Sealer's employment, he entered into a Non-Disclosure and Non-Solicitation Agreement ("Agreement") that provides in relevant part "that he would comply with a reasonable post-employment non-solicitation provision." Doc. 8 at 7. As Alscott states, "the non-solicitation provision would merely protect Alscott's purchased assets by prohibiting Sealer from soliciting or servicing Alscott's clients with whom he worked for a 24-month period after his separation." *Id*. The Agreement includes a provision protecting Alscott's confidential information, which states in pertinent part as follows:

> SAM SEALER will not use, and will not disclose to anybody, and will not cause any and all of its respective entities owned or controlled by them (an "Affiliate") not to disclose to anybody, any Confidential Information . . . . The term "Confidential Information" includes but is not limited to information about the Company or its affiliates that SAM SEALER acquired while working for the Company, including but not limited to: vendor lists; customer lists, contact information, needs, preferences and history of service; business operations and methods; training materials; service marks and trademarks, marketing plans; customer relations information; service and operations forms; practices, procedures, policies and guidelines; sales information; supplier/vendor agreements and information; construction agreements and information; and all other information, lists, records and data relating to or dealing with the business operations or activities of the Company . . . ."

*Id*. at 8, quoting the Agreement. The Agreement also contains a non-solicitation provision, prohibiting Mr. Sealer from actions that:

> directly or indirectly, solicit or attempt to solicit any business from any Client, for the purpose of providing products or services that are the same as or similar to those

that were provided by the Company, or its affiliates, at any time during the two-year period preceding the termination of their engagement.

*Id*. at 9. The Agreement defines a "Client" as "any individual or entity that was, at any time during the two-year period preceding to the termination of their engagement, a customer, or an actively sought prospective customer, or referral source of any customer, of the Company." *Id*.

In early March 2022, Mr. Sealer separated from Alscott under circumstances that the parties dispute. Alscott alleges that he resigned on March 9, 2022, but Mr. Sealer asserts that, after refusing to agree with terms of an impending company sale but not resigning, he continued to service Alscott clients through March 11, 2022, until he was locked out of his work e-mail account. *Id*. at 11; Doc. 13 at 9. Alscott alleges that after Mr. Sealer left the company, he began working for SBG, a competitor who sells similar bond products to Texas clients. Doc. 8 at 12.

Alscott alleges that soon after ending employment with Alscott, Mr. Sealer violated the Agreement by contacting "several of Alscott's current clients to enter into agreements with SGB or Sealer to purchase bond products and services." *Id*. Specifically, Mr. Sealer informed twenty Alscott's clients that "he was no longer associated with Alscott and welcome[ed] the opportunity to service Alscott's clients himself, through his new entity, or in concert with another entity (whereby Sealer or SBG would receive a kickback)." *Id*. As a result, Alscott asserts, that on April 8, 2022, one client, Pennington, terminated its business relationship with Alscott in favor of a third-party company, IMA, Inc. *Id*. at 13.

In Response, Defendants offer conflicting evidence rebutting many of Alcott's material facts. Relevant to Alscott's claims of solicitation, Defendants state that on March 14, 2022, three days after Defendants allege that Alscott terminated the parties' relationship, an established client, Reliable Paving, Inc., contacted Mr. Sealer to request bond services, and he "forwarded the request to Alscott and then informed [the client] the bond would be taken care of." Doc. 13 at 10. After

repeated contact from Reliable and no response from Alscott, Mr. Sealer provided the requested bond and directed the client to "direct all bonding needs to Alscott." Doc. 13-1, Def.'s Ex. A, Declaration of Sam Sealer ¶ 20. Mr. Sealer "instructed all of [his] clients as of March 9, 2022, to Alscott for future bonding needs. SBG and [Sealer] are no longer working with any entity or individual that was [Sealer's] client as of March 9, 2022." *Id.*

Alscott alleges that without the court granting injunctive relief, Defendants may continue to solicit Alscott's clients, and in doing so, add to the damages Alscott has already suffered. Doc. 8 at 13-14.

## I.     Legal Standard

The purpose of a temporary restraining order is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). Any temporary restraining order, therefore, is a temporary measure to protect rights until a hearing can be held. *Federal Home Loan Morg. Corp. v. American Home Mortg. Corp.*, 2007 WL 2228619, at *2 (N.D. Tex. 2007).

There are four prerequisites for the extraordinary relief of a temporary restraining or preliminary injunction. A court may grant such relief only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Mississippi Power and Light Co. v.*

*United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction. Both a temporary restraining order or a preliminary injunction are "an extraordinary remedy and should only be granted if the plaintiff has clearly carried the burden of persuasion on all four requirements." *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008) (cleaned up).

**II.     Discussion**

Plaintiff argues that it is likely to succeed on the merits of its claims for trade secret violations and breach of contract. The court determines that, at this stage, Plaintiff has failed to demonstrate that there is a substantial threat of irreparable harm, and, accordingly, the court need not reach the remaining three elements.

To show a substantial threat of irreparable harm, the movant must allege the future harm is likely, not just possible. *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). Conclusory statements or speculations of future irreparable injury are not sufficient. *Id*. (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). "Although past wrongs may help establish the threat of a future injury, they are alone insufficient." *Aransas Project v. Shaw*, 775 F.3d 641, 663 (5th Cir. 2014) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

In the context of unfair competition resulting in the loss of customers, a plaintiff must show "real and immediate threat of future or continuing injury apart from any past injury." *Porter Teleo, LLC v. Print4One, LLC*, No. 4:19-CV-03334, 2020 WL 6277583, at *3 (S.D. Tex. Sept. 9, 2020). Where a defendant claims to have ceased all allegedly violating activities and the plaintiff does not rebut this assertion with evidence of continuing losses, the plaintiff has "failed to demonstrate

a real and immediate threat of future or continuing injury, as required for a preliminary injunction." *Id.* (citing *Shaw*, 775 F.3d at 663).

Here, Alscott alleges that Mr. Sealer violated the Agreement prior to his departure by e-mailing Alscott customers and soliciting their continued bond purchases through him or his entity, SBG. Thorough review of Plaintiff's allegations and exhibit evidence reveals that Plaintiff's allegation stem from a single event in which Mr. Sealer—while still employed by Alscott—contacted twenty of "Alcott's clients to inform them he was no longer associated with Alscott and welcome[ed] the opportunity to service Alcott's client himself, through his new entity, or in concert with another entity (whereby Sealer or SBG would receive a kickback)." Doc. 15-1, Pl's Ex. A, Declaration of David Salavitch ¶ 21. Alscott names one client—Pennington—who one month later ended its relationship with Alscott to conduct future bond business with a third-party company. *Id.* at ¶ 22. Alscott's conclusory statement that Pennington ceased its relationship with Alscott based on Mr. Sealer's contact does not show the court a connection between his e-mail and the loss of Pennington's business, or a connection between Defendants and the third-party company. Importantly, Alscott does not detail any further solicitation or clients loss that transpired between filing the Motion on April 14, 2022, and its Reply brief three months later on July 11, 2022, but instead makes the conclusory statement that "Alscott will continue to suffer irreparable injury . . . [i]f Defendants continued to violate the Non-Solicitation Agreement." Doc 15 at 7.

Even if the court views Defendants' admission of servicing the bond request of client Reliable Paving as Alscott characterizes it—that Defendants "boasted" of violating the Agreement by servicing the client—this is again an isolated event in the days immediately following the parties' separation. Doc. 15 at 3-4. Alscott presented no indication that Defendants will continue to solicit clients, and Defendants stated that they "are no longer working with any entity or

individual that was [Sealer's] client as of March 9, 2022." Doc. 13-1, Def.'s Ex. A, Declaration of Sam Sealer ¶ 20.

The court determines that Alscott has failed to present any evidence of a client lost to Defendants or of any continuing solicitation of Alscott clients; thus, it is not clear to the court that there is a threat of imminent harm, much less any action to restrain. Further, if Plaintiff can establish that Defendants are liable for the loss of a single customer (Pennington) or a single bond-transaction (Reliable Paving), those acts are not the irreparable injuries that "cannot be undone through monetary remedies" that injunctive relief is intended to cure. *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012). Plaintiff has not carried its burden of proof on this essential element.

Because Plaintiff fails to show one of the essential elements, the court determines that an analysis of the other elements is unnecessary. The court notes, however, that Plaintiff has not shown a substantial likelihood of success on the merits of its breach of the contract claim. Under Texas law, the essential elements of a breach of contract claim are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) a breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Group, LLC.*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2011)) (internal quotation marks omitted).[*]

Here, Plaintiff has not shown a substantial likelihood of success on the merits of its claim for breach of the non-solicitation agreement. Alscott does not plausibly allege any damages

---

[*] The Agreement contains a forum and choice-of-law provision, selecting Missouri courts and state law. Doc. 15-1 at 13. Plaintiff, however, filed its lawsuit in this Texas federal court, and in the Motion, asks the court to apply Texas law instead. Doc. 8 at 21. Defendants do not dispute this request. Therefore, the court will assume for the purpose of resolving these motions that Texas law applies to this dispute.

**Memorandum Opinion and Order – Page 7**

resulting from Mr. Sealer's alleged breach because it does not show that Pennington or any other client left Alscott to conduct business with Defendants. Further, Defendants present evidence that rebut many of Alscott's material facts, including whether Alscott provided any confidential information to Mr. Sealer such that he could misappropriate it, the circumstances in which he signed the Agreement, and how the parties terminated their relationship. Defs.' Resp., Doc. 13 at 5-6, 8-10. In light of these contested facts, the court determines that Alscott has not shown a substantial likelihood of success on the merits.

Accordingly, Alscott is not entitled to the extraordinary remedy of any injunctive relief. For this reason, the court **denies** Plaintiff's request for a temporary restraining order and preliminary injunction.

### III. Conclusion

For the reasons herein stated, Plaintiff has not met its burden of establishing each of the requirements for a temporary restraining order or preliminary injunction. The court therefore **denies** Plaintiff's Motion for Temporary Restraining Order (Doc. 8) and **denies without prejudice** Plaintiff's Motion for Preliminary Injunction and Expedited Discovery (Doc. 8).

**It is so ordered** this 25th day of October, 2022.

Sam A. Lindsay
United States District Judge